[No. D047894. Fourth Dist., Div. One. Jan. 12, 2007.]

BLACK HILLS INVESTMENTS, INC., Plaintiff and Respondent, v. ALBERTSON'S, INC., Defendant and Appellant.

## COUNSEL

Brady, Vorwerck, Ryder & Caspino, Robert B. Ryder, Ravi Sudan; Ryan, Swanson & Cleveland, Roger Kindley and Robert R. King for Defendant and Appellant.

Duckor, Spradling, Metzger & Wynne, Scott L. Metzger and Geoffrey C. Chackel for Plaintiff and Respondent.

OPINION

**NARES, Acting P. J.**—This case arose out of an alleged violation of section 66499.30, subdivision (b) (hereafter section 66499.30(b)) of the Subdivision Map Act (Gov. Code,[1] § 66410 et seq.) (the SMA), which generally prohibits the sale of real property for which a parcel map is required under the SMA until a parcel map is recorded in compliance with the SMA and any applicable local ordinance. In late 2004 Albertson's, Inc. (Albertson's), and Black Hills Investments, Inc. (Black Hills), entered into two nearly identical contracts (the contracts) under which Black Hills agreed to purchase from Albertson's two parcels of then unsubdivided real property located in a shopping center development. Each of the contracts contained a provision that Albertson's had the right to terminate the contracts unless Albertson's obtained "all governmental approvals relating to any lot split [or] subdivision" prior to the closing date. A few weeks later, before the closing date, Albertson's recorded a parcel map that subdivided the shopping center into four parcels, including the two that Black Hills had agreed to purchase. Later, however, Black Hills informed Albertson's that it was terminating the contracts and requesting the return of its deposits. When Albertson's refused to return the deposits, Black Hills brought suit against it seeking a determination that the contracts were void under the SMA because the parties entered into the contracts before Albertson's recorded a parcel map for the shopping center. Both parties moved for summary judgment. The court denied Albertson's summary judgment motion and granted summary judgment in favor of Black Hills.

Albertson's appeals, contending (1) the court erred in determining that the contracts were not expressly conditioned upon the filing of a parcel map as required by section 66499.30, subdivision (e) (hereafter section 66499.30(e)) of the SMA, which codifies an exception to the prohibition set forth in section 66499.30(b) "where the sale . . . is expressly conditioned upon the approval and filing of a . . . parcel map, as required under [the SMA]"; (2) Albertson's recordation of the required parcel map prior to the closing date terminated any right Black Hills had to avoid the contracts under section 66499.32 of the SMA; and (3) Black Hills's acts following Albertson's recordation of the parcel map constituted ratification of the contracts.

We conclude under the undisputed facts of this case that (1) the contracts violated the prohibition codified in section 66499.30(b) because they were contracts to sell unsubdivided parcels of real property before the seller, Albertson's, recorded a parcel map in compliance with the SMA; and (2) the contracts did not comply with the exception set forth in section 66499.30(e)

---

[1] All further statutory provisions are to the Government Code unless otherwise specified.

because they expressly permitted Albertson's to waive the condition that a parcel map be recorded prior to the closing date, and were therefore void.

We also conclude that section 66499.32 is inapplicable on the facts of this case because that section expressly applies to a contract to sell real property that "has been divided, or which has resulted from a division, in violation of [the SMA]" (§ 66499.32, subd. (a)), and the contracts at issue here were for the sale of real property that had not yet been subdivided, thereby rendering the sale a violation of the prohibition set forth in section 66499.30(b). We also reject Albertson's contention that Black Hills ratified the contracts. Accordingly, we affirm the summary judgment in favor of Black Hills.

## FACTUAL BACKGROUND

On November 22, 2004, Black Hills entered into two contracts with Albertson's to purchase two parcels of real property—pads "C" and "D"—in a shopping center development. At the time the parties executed the contracts, the two parcels had not yet been created through subdivision of the shopping center property (the property).

Black Hills deposited $133,000 in earnest money toward the purchase of the two parcels. The contracts provided that the earnest money was "absolutely non-refundable for any reason" except Albertson's default under the contracts or the termination of the contracts pursuant to specified sections of the contracts.

### A. *Paragraph 8A of the Contracts*

Paragraph 8A of each contract obligated Albertson's to obtain and record a parcel map legally subdividing the property prior to the agreed-upon closing date. Paragraph 8A, however, made that obligation subject to an express condition that gave *Albertson's* the right to terminate the contracts in the event Albertson's failed to obtain governmental approval of the creation of the two parcels.

Under paragraph 9 of the contract, the closing date was subject to the satisfaction of a number of buyer and seller conditions, including the obligations and conditions set forth in paragraph 8A (discussed *ante*). The closing date was set for January 27, 2005.

### B. *Albertson's Recordation of the Parcel Map*

On December 10, 2004, Albertson's, as it promised to do in paragraph 8A(b) of the contracts, recorded a parcel map that subdivided the property into four smaller parcels, including the two parcels that Black Hills agreed to purchase.

## C. *Black Hills's Election to Avoid the Contracts*

In a letter dated January 26, 2005, one day before the closing date, Black Hills's counsel sent a letter to Albertson's stating that Black Hills wished to terminate the contracts and requesting that Albertson's return the deposit money. The letter, which did not expressly refer to the SMA, asserted that Black Hills had not received a preliminary title report for the two parcels it contracted to purchase, that the only title report it had received was for the shopping center as a whole "in a pre-subdivided condition" and that as a result Black Hills "ha[d] not had an opportunity to perform due diligence, including but not limited to, conducting a survey on the parcels it contracted to buy."

The letter also stated that Albertson's "ha[d] attempted, without Black Hills' consent, to materially alter the nature of the real property [Black Hills had] contracted to buy. In addition to imposition of an easement on Pad 'D' as a result of the subdivision map recorded, Albertson's [was attempting] to place restrictions in the grant deed rather than recording a declaration of restrictions with respect to the entire subdivision. The import of this change is that it deprives [Black Hills] of the right to participate in the 90 [percent] vote that would have been necessary to change the declaration of restrictions." The letter further stated that "by granting certain concessions to at least one purchaser of another lot in this subdivision, [Albertson's] ha[d] materially altered the Common Area Maintenance burden which would have been placed on Pads 'C' and 'D' under the original contract of sale." Albertson's refused to return the deposit money to Black Hills.

## PROCEDURAL BACKGROUND

In its complaint against Albertson's, Black Hills sought (1) a declaration that the contracts were void because they were entered into prior to the recordation of a subdivision map for the property in violation of the SMA (§ 66499.30), and Black Hills was entitled to the return of its earnest money deposits; (2) damages for breach of contract as a result of Albertson's failure to deliver title "as called for in the Contracts"; and (3) a determination that Albertson's alleged violation of the SMA constituted a violation of Business and Professions Code section 17200.

## A. *Order Granting Summary Judgment in Favor of Black Hills*

Each party brought a motion for summary judgment or, in the alternative, for summary adjudication. The court granted Black Hills's summary judgment motion and denied Albertson's motion. In its order, the court found the contracts were voidable at Black Hills's option, stating: "Both contracts

contained a provision purportedly to fall within the exception contained in [section 66499.30(e)]. However, the court finds the provisions do not comply because they do not advance one of the purposes of the [SMA], that is to protect individual real estate buyers. The provisions only allowed Albertson's to terminate the contracts if a subdivision map was not obtained prior to the closing date. . . . Under the contracts, [Black Hills] could not terminate the contracts if Albertson's did not obtain the map. Accordingly, the court finds that these contracts were not expressly conditioned upon the filing of a subdivision map and thus the exception of [section] 66499.30(e) does not apply. [¶] Because the section does not apply and because no subdivision map had been filed on the property at the time of the contracts, Albertson's violated the [SMA]. Thus, under [section] 66499.32, subdivision (a), the contracts were voidable at [Black Hills's] option."

The court entered judgment in favor of Black Hills, awarding it restitution in the amount of $133,000, plus interest and costs, including attorney fees. Albertson's appeal followed.

## STANDARD OF REVIEW

"Since a motion for summary judgment or summary adjudication 'involves pure matters of law,' we review a ruling on the motion de novo to determine whether the moving and opposing papers show a triable issue of material fact. [Citations.]" (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450 [75 Cal.Rptr.2d 54].)

It is well established that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law that is subject to de novo review on appeal. (*Le Gault v. Erickson* (1999) 70 Cal.App.4th 369, 372 [82 Cal.Rptr.2d 692] (*Le Gault*).)

## DISCUSSION

In challenging the court's grant of summary judgment in favor of Black Hills, Albertson's contends (1) the court erred in determining that the contracts were not expressly conditioned upon the filing of a parcel map as required by section 66499.30(e); (2) Albertson's recordation of the required parcel map prior to the closing date terminated any right Black Hills had

under the SMA to avoid the contracts; and (3) Black Hills's act of objecting to "proposed changes" in the contracts following Albertson's recordation of the parcel map constituted ratification of the contracts. We reject these contentions.

### A. *Statutory Scheme: The SMA*

■ "The [SMA] is 'the primary regulatory control' governing the subdivision of real property in California. [Citation.]" (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 996–997 [129 Cal.Rptr.2d 869, 62 P.3d 103] (*Gardner*).) "The [SMA] generally requires all subdividers of property to design their subdivisions in conformity with applicable general and specific plans and to comply with all of the conditions of applicable local ordinances. [Citation.]" (*Id.* at p. 997.) "To comply with the [SMA], the landowner must secure local approval and record an appropriate map. [Citation.] A final (subdivision) map is generally required for subdivisions of five or more parcels. [Citations.] A parcel map is generally required for the creation of four or fewer parcels. [Citations.]" (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 564 [6 Cal.Rptr.3d 746] (*van't Rood*).)

"The [SMA] has three principal goals: to encourage orderly community development, to prevent undue burdens on the public, and to protect individual real estate buyers. [Citations.]" (*van't Rood, supra*, 113 Cal.App.4th at pp. 563–564.) "By generally requiring local review and approval of all proposed subdivisions, the [SMA] aims to 'control the design of subdivisions for the benefit of adjacent landowners, prospective purchasers and the public in general.' [Citation.] More specifically, the [SMA] seeks 'to encourage and facilitate orderly community development, coordinate planning with the community pattern established by local authorities, and assure proper improvements are made, so that the area does not become an undue burden on the taxpayer.' [Citations.]" (*Gardner, supra*, 29 Cal.4th at pp. 997–998.)

■ "To enforce its important public purposes, the [SMA] generally prohibits the *sale*, lease, or financing of any parcel of a subdivision until the recordation of an approved map in full compliance with the law." (*Gardner, supra*, 29 Cal.4th at p. 999, italics added, citing § 66499.30, subds. (a)–(c).)

Of particular relevance to this appeal, section 66499.30(b), one of the subdivisions that codifies this general prohibition, provides: "*No person shall sell*, lease, or finance *any* parcel or *parcels of real property* or commence construction of any building for sale, lease or financing thereon, except for

model homes, or allow occupancy thereof, *for which a parcel map is required by this division or local ordinance, until the parcel map thereof in full compliance with this division and any local ordinance has been filed for record* by the recorder of the county in which any portion of the subdivision is located." (Italics added; see also 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 822, p. 960 ["It is unlawful to sell subdivided parcels without complying with the [SMA]"].)

An exception to the foregoing prohibition in section 66499.30(b) is codified in section 66499.30(e), which provides: "Nothing contained in subdivisions (a) and (b) shall be deemed to prohibit an offer or contract to sell, lease, or finance real property or to construct improvements thereon where the sale, lease, or financing, or the commencement of construction, is *expressly conditioned upon the approval and filing of a* final subdivision map or *parcel map, as required under this division.*" (Italics added.) Citing section 66499.30(e), one commentator has observed that "[e]ven though a final map or parcel map has not been recorded, a subdivider can enter into a contract to sell, lease, or finance, or to construct improvements on, a portion of a larger parcel of land if the contract is *conditioned expressly on the future approval and recordation of a final map or parcel map prior to the close of any escrow* or the commencement of construction." (9 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 25:147, p. 361, italics added, fn. omitted.)

■ Section 66499.30 does not expressly provide a remedy to a buyer who has entered into a real property sale transaction that is prohibited under that section. However, the remedies for a violation of some provisions of the SMA are set forth in article 2 ("Remedies") of chapter 7 ("Enforcement and Judicial Review") of the SMA. (See 36D West's Ann. Gov. Code (1997 ed.) §§ 66499.32–66499.36, pp. 489–499.) For example, section 66499.32, subdivision (a) (hereafter section 66499.32(a))[2] provides to a buyer of real property, or to a person who has contracted to buy real property, the right to void, at the "sole option" of that person, "[a]ny . . . contract to sell real property which has been *divided,* or which has *resulted from a division, in violation of the provisions of [the SMA].*" (Italics added.) " 'A voidable contract is one where one or more parties have the power, by a manifestation

---

[2] Section 66499.32(a) provides: "*Any* deed of conveyance, sale or *contract to sell real property which has been divided, or which has resulted from a division, in violation of the provisions of this division,* or of the provisions of local ordinances enacted pursuant to this division, is *voidable* at the sole option of the grantee, buyer or person contracting to purchase, his heirs, personal representative, or trustee in insolvency or bankruptcy *within one year after the date of discovery of the violation* of the provisions of this division or of local ordinances enacted pursuant to the provisions of this division, but the deed of conveyance, sale or contract to sell is binding upon any successor in interest of the grantee, buyer or person contracting to purchase, other than those above enumerated, and upon the grantor, vendor, or person contracting to sell, or his assignee, heir or devisee." (Italics added.)

of election to do so, to avoid the legal relations created by the contract . . . .' [Citation.]" (*Le Gault, supra,* 70 Cal.App.4th at p. 374.)

The buyer's right under section 66499.32(a) to avoid a contract for the sale of real property that has been divided in violation of the SMA, however, is subject to the limitation set forth in section 66499.32, subdivision (b) (hereafter section 66499.32(b)), which provides in part that "[t]he provisions of this section shall not apply to the conveyance of any parcel of real property identified in a certificate of compliance filed pursuant to Section 66499.35[3] or identified in a recorded final map or parcel map, from and after the date of recording." A recorded parcel map constitutes a certificate of compliance. (§ 66499.35, subd. (d) ["A recorded . . . parcel map . . . shall constitute a certificate of compliance with respect to the parcels of real property described therein"].)

### B. *Analysis*

#### 1. *Albertson's Claim of Compliance with Section 66499.30(e)*

Albertson's first contends "[i]t is not disputed that the Contracts were expressly conditioned upon Albertson's filing of a parcel map," and thus the court erred in determining that the contracts were not expressly conditioned upon the filing of a parcel map as required by section 66499.30(e). We reject this contention.

The important public purposes of the SMA—including the protection of individual real estate buyers—are enforced in part by the SMA's general prohibition under section 66499.30(b) of the sale of any parcels of real property for which a parcel map is required by the SMA or local ordinance until the parcel map is recorded in full compliance with the SMA or local ordinance by the recorder of the county in which the parcels are located. (*Gardner, supra,* 29 Cal.4th at p. 999; *van't Rood, supra,* 113 Cal.App.4th at pp. 563-564; § 66499.30(b).) As already discussed, section 66499.30(e), on which Albertson's relies, codifies an exception to this general prohibition and permits a subdivider to enter into a contract to sell such parcels prior to the

---

[3] Section 66499.35, subdivision (a) provides: "Any person owning real property or a vendee of that person pursuant to a contract of sale of the real property may request, and a local agency shall determine, whether the real property complies with the provisions of this division and of local ordinances enacted pursuant to this division. If a local agency determines that the real property complies, the city or the county shall cause a *certificate of compliance* to be filed for record with the recorder of the county in which the real property is located. The certificate of compliance shall identify the real property and shall state that the division of the real property complies with applicable provisions of this division and of local ordinances enacted pursuant to this division. The local agency may impose a reasonable fee to cover the cost of issuing and recording the certificate of compliance." (Italics added.)

recordation of a parcel map where the sale is "expressly conditioned upon the approval and filing of a . . . parcel map, as required under this division."

Here, it is undisputed that in late November 2004, about three weeks before it recorded the parcel map on December 10, Albertson's entered into the contracts to sell the two parcels of then unsubdivided real property to Black Hills. Thus, Albertson's agreement to sell the parcels was in violation of the SMA (specifically, the prohibition set forth in § 66499.30(b)) unless the contracts contained a provision that "expressly conditioned" the sale "upon the approval and filing of a . . . parcel map, as required under this division" as provided by section 66499.30(e).

The issue we must decide is whether the contractual provision in question, paragraph 8A (titled "Seller's Conditions"), complied with the requirements of section 66499.30(e) so as to effectuate the purpose of the SMA. We conclude that it did not.

Paragraph 8A(b) of both contracts provided: "Notwithstanding the execution of this Contract, [*Albertson's*] *may terminate this Contract without liability unless the following condition has been satisfied or waived in writing by* [*Albertson's*] *prior to the Closing Date*: [¶] . . . [¶] (b) Subdivision. If required to comply with local subdivision or similar laws, ordinances, rules, or regulations, [*Albertson's*] *shall have obtained*, at [Albertson's] expense, *any and all governmental approvals relating to any lot split, . . . subdivision* or similar actions required by the appropriate local governmental agency or entity to certify that the Subject Property and the remaining parcels shown on Exhibit 'A' comply with such laws, ordinances, rules or regulations *following the conveyance of the Subject Property to* [*Black Hills*] *upon terms and conditions acceptable to* [*Albertson's*] *in* [*Albertson's*] *sole discretion.*" (Italics added.)

The foregoing express language of paragraph 8A of the contracts obligated Albertson's, as the seller, to obtain and record a parcel map legally subdividing the property prior to the agreed-upon closing date, but made that obligation subject to an express condition that gave Albertson's the right to terminate the contracts "without liability" in the event Albertson's, before the closing date, either (1) failed to obtain governmental approval of the creation of the two parcels, or (2) "waived" the condition in writing.

The undisputed material facts in this case thus establish that paragraph 8A of the contracts did not comply with section 66499.30(e) because it did not "expressly condition[]" Albertson's sale of the unsubdivided parcels "upon the approval and filing of a . . . parcel map, as required under [the SMA]" within the meaning of that subdivision to except the sale from the prohibition

codified in subdivision (b) of that section. We conclude the contracts were illegal under the SMA, and thus void rather than voidable, as a matter of law at the time they were executed because (1) the sale of the unsubdivided parcels violated the prohibition codified in section 66499.30(b), and (2) the exception to that prohibition codified in section 66499.30(e) did not apply as the contracts did not expressly condition the sale upon the approval and filing of a parcel map, as required under the SMA.

2. *Albertson's Claim That Its Parcel Map Recordation Terminated Black Hills's Right to Avoid the Contracts Under Section 66499.32(a)*

Albertson's next contends that its recordation of the parcel map in December 2004, prior to the closing date, terminated any right Black Hills had to avoid the contracts under section 66499.32(a), and thus the court erred "by ignoring the limiting language contained in [that section] that precludes the buyer from voiding the contract 'from and after the date of recording of a parcel map.' " We reject this contention.

As already discussed, a buyer has the right under section 66499.32(a) to void a contract to sell real property that "has been divided . . . in violation of the provisions of [the SMA]," and may exercise that right at the buyer's "sole option" within one year after the date of discovery of the violation.

The "limiting language" in section 66499.32 (hereafter the section 66499.32 limitation) on which Albertson's relies is set forth in subdivision (b) of that section. The section 66499.32 limitation provides: "The provisions of this section shall not apply to the conveyance of any parcel of real property identified in a *certificate of compliance* filed pursuant to Section 66499.35 or identified in a recorded final map or parcel map, *from and after the date of recording.*" (Italics added.)

Citing the section 66499.32 limitation, Albertson's asserts that "Black Hills was precluded from exercising any right it may have had to void the [contracts] after Albertson's recorded the parcel map on December 10, 2004." In support of this assertion, Albertson's relies on *Le Gault, supra,* 70 Cal.App.4th 369.

■ Albertson's reliance on section 66499.32, the section 66499.32 limitation, and *Le Gault* is misplaced. By its own terms, section 66499.32(b) only applies to a contract to sell real property that "has been *divided* . . . in violation of the provisions of [the SMA]." (Italics added.) In *Le Gault,* the Court of Appeal explained that section 66499.32 "allows the purchaser to void a sale of property *divided in violation of the SMA.*" (*Le Gault, supra,* 70 Cal.App.4th at p. 373, italics added.)

■ Here, the undisputed material facts establish that the contracts, which we have held were illegal under the SMA because they violated the prohibition set forth in section 66499.30(b), involved the sale of two parcels of real property that had *not* been subdivided at the time Albertson's and Black Hills executed the contracts. We thus conclude that section 66499.32(a) is inapplicable because this case does not involve a contract for the sale of real property that has been divided in violation of the SMA. We also conclude that because section 66499.32(a) is inapplicable, the section 66499.32 limitation is also inapplicable; and *Le Gault* is inapposite because it did not involve section 66499.30.[4]

### 3. *Albertson's Claim That Black Hills Ratified the Contracts*

Last, Albertson's contends that Black Hills's act of objecting to certain "proposed changes"[5] in the contracts following Albertson's recordation of the parcel map affirmed the transaction and constituted ratification of the contracts. We reject this contention.

Albertson's relies on *Channell v. Anthony* (1976) 58 Cal.App.3d 290, 304 [129 Cal.Rptr. 704] (*Channell*) and Civil Code section 1588 for the proposition that a contract that is "otherwise voidable" may be ratified by the party entitled to avoid it if that party takes steps to affirm the transaction. Albertson's asserts that "[a]s of January 25, 2005, over six weeks after [Albertson's] recordation [of the parcel map], Black Hills objected to proposed changes to the original Contracts, indicating that Black Hills wished to remain bound by the original agreement." Albertson's also asserts that Black Hills was aware Albertson's recorded the parcel map in December 2004; the letter from Black Hills's counsel purporting to repudiate the contracts was dated January 26, 2005, and, prior to that date, "Black Hills' actions clearly indicate[d] its desire to ratify the contract[s]"; and thus Black Hills had no right to void the contracts "notwithstanding the avoidance provision of the [SMA]" (§ 66499.32(a)).

Albertson's reliance on *Channell* is misplaced. In *Channell*, the Court of Appeal held that although a claim for damages for fraud may be waived

---

[4] Section 66499.32 is a curative statute in that it provides a remedy to a buyer who has entered into a contract to purchase a parcel of real property that has been subdivided, but is not a legal parcel. Section 66499.30, on the other hand, is a preventative statute in that it seeks to prevent the creation of illegal parcels by prohibiting the sale of any parcel for which a final or parcel map is required under the SMA or a local ordinance until the map has been recorded in compliance with the SMA or ordinance (§ 66499.30, subds. (a) & (b)), unless the contract for the sale of the parcel expressly conditions the sale upon the approval and filing of the map as required under the SMA (§ 66499.30(e)).

[5] The "proposed changes" to which Albertson's refers are briefly discussed in the factual background of this opinion.

when the injured party ratifies the subject transaction or contract with full knowledge of the fraud, such claim is not waived when the acts constituting the waiver were induced by fraud. (*Channell, supra,* 58 Cal.App.3d at p. 304.) *Channell* is inapposite. That case did not involve the SMA, and this case does not involve either a fraud claim or a waiver defense.

Albertson's reliance on Civil Code section 1588 is also misplaced. That section provides that "[a] contract which is *voidable* solely for want of due consent, may be ratified by a subsequent consent." (Civ. Code, § 1588, italics added.) Here, there is no claim or showing that the contracts were voidable solely for lack of consent.

■ Albertson's contention that the summary judgment in favor of Black Hills should be reversed because Black Hills forfeited its right to void the contracts by acting in a manner that ratified the contracts following the recordation of the parcel map is unavailing because it is based on the incorrect premise that the contracts were voidable at Black Hills's option. For reasons already discussed, the contracts were illegal under the SMA as a matter of public policy, and thus were void, not voidable. Albertson's has cited no authority, and we are aware of none, establishing that a party to such a contract may ratify the contract, and thereby render it enforceable, by engaging in conduct that affirms it. "Because an illegal contract is void, it *cannot be ratified* by any subsequent act . . . . [Citations.]" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 432, pp. 473–474.)

### 4. *Black Hills's Request for Attorney Fees*

Black Hills argues it should be awarded its contractual attorney fees on appeal as the prevailing party. Black Hills has shown that both contracts contain an attorney fees provision that expressly allows the prevailing party to recover reasonable attorney fees and costs "incurred in preparing for, prosecuting or *defending any appeal* of any suit, action, or other proceeding." (Italics added.)

■ Because Black Hills is the prevailing party on appeal, it is contractually entitled to recover the reasonable attorney fees it has incurred in defending against Albertson's appeal. Accordingly, Albertson's is ordered to pay the reasonable attorney fees Black Hills incurred on appeal. "Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees . . . ." (*Security Pacific National Bank v. Adamo* (1983) 142 Cal.App.3d 492, 498 [191 Cal.Rptr. 134].)

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court for its determination of an award of attorney fees and costs on appeal to Black Hills.

McDonald, J., and Irion, J., concurred.