[No. C056267. Third Dist. Dec. 29, 2008.]

SIXELLS, LLC, Plaintiff and Appellant, v.
CANNERY BUSINESS PARK et al., Defendants and Respondents.

Counsel

Law Office of David J. Lonich and David J. Lonich for Plaintiff and Appellant.

Morgan Miller Blair, Marilyn Morris, Kevin R. Brodehl and Katherine F. Wenger for Defendant and Respondent Cannery Business Park.

Trainor Fairbrook, John D. Fairbrook and Arthur B. Mark III for Defendants and Respondents Angelo K. Tsakopoulous, C Street Investor and C Street Investor II.

## Opinion

**ROBIE, J.**—This case involves a contract for the purchase and sale of four acres of real property. The contract allowed the purchaser of the property and drafter of the contract, plaintiff Sixells, LLC, to complete the purchase if, at its election, the four acres were made into a legal parcel by recording a final map or if Sixells "waived" the recording of a final map. Sixells and the seller, defendant Cannery Business Park (the Cannery), signed the contract. Before the property was sold to Sixells, the Cannery terminated the contract. The Cannery eventually sold the property to a group of investors comprised of defendants Angelo K. Tsakopoulos, C Street Investor, LLC, and C Street Investor II, LLC (collectively the C Street Investors). Sixells sued the Cannery, Tsakopoulos, and the C Street Investors. They demurred to the complaint on the ground that the contract was void. The court agreed and sustained the demurrers without leave to amend. Sixells appeals.

We hold the contract was void at its inception because the waiver provision violated the Subdivision Map Act (Gov. Code,[1] § 66410 et seq.), which prohibits the sale of a parcel of real property until a parcel map has been filed (§ 66499.30, subd. (a)) unless the contract to sell the property is "expressly

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

conditioned" upon the approval and filing of a final map (§ 66499.30, subd. (e)). Here, the contract satisfied neither requirement. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On review from the trial court sustaining a demurrer, we treat the demurrer as admitting all properly pled material facts in the complaint, but do not assume the truth of the contentions, deductions, or conclusions of fact or law. (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 471 [40 Cal.Rptr.3d 392].) Applying this standard, Sixells's complaint alleged the following:[2]

The Cannery owned an office park on C Street in Sacramento known as Cannery Business Park (business park). Within the business park were four acres of undeveloped land. Sixells entered into a contract with the Cannery to buy the four acres. The contract allowed Sixells to complete the purchase if, at its election, the four acres were made into a legal parcel or if Sixells "waived" creation of the legal parcel. Specifically, the contract provided as follows: "As conditions precedent to Buyer's obligations under this Agreement, the following events must all either occur and/or be waived by Buyer. If all of these events do not occur and/or are not waived by Buyer, then Buyer shall have the right to terminate this Agreement." One of the enumerated events was the following: "On the Closing Date, a final map shall have been recorded so that the Property constitutes a legal parcel that can be developed into the Project." Sixells wrote the contract and both parties signed it.

Two months later, the Cannery terminated the contract. Five months later, the Cannery sold the business park, including the four acres, to Tsakopoulos and the C Street Investors.

Sixells filed a complaint for declaratory relief against the Cannery, Tsakopoulos, and the C Street Investors; breach of contract against the Cannery; specific performance against Tsakopoulos and the C Street Investors; and intentional interference with contractual relations against Tsakopoulos and the C Street Investors.

Defendants demurred to the complaint on the ground that the contract was void. Tsakopoulos and the C Street Investors also moved to expunge a lis

---

[2] We note that Sixells's entire "factual statement" and "procedural statement" in its opening brief is void of any citation to the record in violation of California Rules of Court, rule 8.204(a)(1)(C).

pendens that Sixells had recorded on the property. The court sustained the demurrers without leave to amend, expunged the lis pendens, and awarded the Cannery, Tsakopoulos, and the C Street Investors attorney fees and costs. Sixells challenged by way of writ petition the order expunging the lis pendens, which this court summarily denied. In this appeal, Sixells contends the court erred in sustaining the demurrers.[3] We disagree.

## DISCUSSION

## I

### *The Contract Was Void Because It Violated the Subdivision Map Act*

The trial court ruled that the contract here was void because it violated the Subdivision Map Act. The trial court was correct.

■ "The Subdivision Map Act is 'the primary regulatory control' governing the subdivision of real property in California." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 996 [129 Cal.Rptr.2d 869, 62 P.3d 103].) It "has three principal goals: to encourage orderly community development, to prevent undue burdens on the public, and to protect individual real estate buyers." (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 563–564 [6 Cal.Rptr.3d 746].)

"To enforce its important public purposes, the Act generally prohibits the sale, lease, or financing of any parcel of a subdivision until the recordation of an approved map in full compliance with the law." (*Gardner v. County of Sonoma, supra,* 29 Cal.4th 990, 999, citing § 66499.30, subds. (a), (b), (c).) As is relevant here, section 66499.30, subdivision (b) prohibits any person from selling "any parcel or parcels of real property . . . for which a parcel map is required by this division or local ordinance, until the parcel map thereof in full compliance with this division and any local ordinance has been filed for record by the recorder of the county in which any portion of the subdivision is located." There is an exception for a "contract to sell . . . real property . . . where the sale . . . is expressly conditioned upon the approval and filing of a final subdivision map or parcel map, as required under this division." (§ 66499.30, subd. (e).)

---

[3] In passing, Sixells also again challenges the expungement of the lis pendens. As we have just stated, however, this court already denied Sixells's writ petition on the same subject. In any event, "an order granting or denying a motion to expunge a lis pendens is not an appealable order." (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 577 [30 Cal.Rptr.3d 15].)

In *Black Hills Investments, Inc. v. Albertson's, Inc.* (2007) 146 Cal.App.4th 883 [53 Cal.Rptr.3d 263] (*Black Hills*), the Fourth Appellate District, Division One applied these statutes to contracts for the sale of real estate that the trial court ruled were void because they violated the Subdivision Map Act. (*Black Hills*, at p. 886.) The contracts "obligated Albertson's [supermarket] to obtain and record a parcel map legally subdividing the property prior to the agreed-upon closing date. Paragraph 8A, however, made that obligation subject to an express condition that gave *Albertson's* the right to terminate the contracts in the event Albertson's failed to obtain governmental approval of the creation of the two parcels." (*Id.* at p. 887.) Before the closing date, the other party to the contract, Black Hills Investments, Inc., sent a letter to Albertson's stating it wanted to terminate the contract. (*Id.* at p. 888.) Black Hills Investments, Inc., then filed a complaint against Albertson's seeking a declaration that the contracts were void because they were entered into before the subdivision map had been recorded in violation of the Subdivision Map Act. (*Black Hills*, at p. 888.) The trial court granted summary judgment in favor of Black Hills Investments, Inc. (*Id.* at p. 889.)

On appeal Albertson's claimed the trial court erred in determining the contracts were not expressly conditioned on the filing of a parcel map as required by section 66499.30, subdivision (e). (*Black Hills, supra,* 146 Cal.App.4th at pp. 889–890.) The appellate court disagreed. While the "contracts obligated Albertson's, as the seller, to obtain and record a parcel map legally subdividing the property prior to the agreed-upon closing date," it "made that obligation subject to an express condition that gave Albertson's the right to terminate the contracts 'without liability' in the event Albertson's, before the closing date, either (1) failed to obtain governmental approval of the creation of the two parcels, or (2) 'waived' the condition in writing." (*Id.* at p. 893.) Based on this language, the court found that the contracts did not comply with section 66499.30, subdivision (e) because they did not expressly condition the sale of the parcels on the approval and filing of a parcel map. (*Black Hills*, at p. 893.) The court therefore "conclude[d] the contracts were illegal under the [Subdivision Map Act], and thus void rather than voidable, as a matter of law at the time they were executed . . . ." (*Black Hills*, at p. 894.)

■ The same analysis applies here. Sixells wrote a contract to purchase four acres of unsubdivided land from the Cannery. The contract allowed Sixells to complete the purchase if, at its election, a final map was recorded or Sixells "waived" the recording of the final map. The contract therefore allowed the sale of a parcel of real property before the final map had been filed (§ 66499.30, subd. (a)) without being "expressly conditioned" (§ 66499.30, subd. (e)) upon the approval and filing of a final subdivision or

parcel map[4] (§ 66499.30, subd. (e)). It was therefore void as a matter of law at the time it was executed. (See *Black Hills, supra,* 146 Cal.App.4th at p. 894.)

Sixells makes four arguments to avoid this result. All lack merit.

■ First, Sixells argues that *Blacks Hills* is bad precedent because it "is completely void of any analysis that sustains the holding." It asserts there was no "attempt to determine whether it was the intent of the parties to somehow circumvent the requirements of the applicable statutes." Sixells's argument misses the point. The intent of the parties is irrelevant. The provisions of the Subdivision Map Act are clear—a person cannot sell any parcel of real property for which a parcel map is required until the final map has been recorded (§ 66499.30, subd. (a)), and the only exception is a contract to sell property that is "expressly conditioned" upon the approval and filing of a parcel map (§ 66499.30, subd. (e)). There is no requirement that the parties intend to violate the Subdivision Map Act.

■ Second, Sixells argues the waiver language is of no significance because any party to a contract can waive provisions created for its benefit. Again, Sixells misses the point. Any attempt to waive the requirements of the Subdivision Map Act is invalid, regardless of how it is done. Here, since the waiver was written into the contract, the contract was void. (See *Black Hills, supra,* 146 Cal.App.4th at p. 894.)

Third, Sixells argues that the Subdivision Map Act is not applicable here. According to Sixells, the contract involved the offer to buy land and the Subdivision Map Act speaks in terms of prohibiting "sell[ing]" (as opposed to buying) property without a recorded final map (§ 66499.30, subd. (a)), as it was designed to protect the buyer. Sixells's argument is contrary to the Subdivision Map Act and its goals. Here, the contract was a "purchase and sale agreement for real property" that allowed for the purchase of four acres *sold by the Cannery without the filing of a final map.* This fits squarely within the prohibition of section 66499.30, subdivision (a). Furthermore, the goals of the Subdivision Map Act are broader than simply protecting the individual real estate buyer. The Subdivision Map Act also aims to encourage orderly community development and prevent undue burdens on the public. (*Black Hills, supra,* 146 Cal.App.4th at p. 890.)

---

[4] Sixells contends the waiver language did not violate the Subdivision Map Act because the contract "had absolutely nothing to do with seeking to acquire the property in violation of the [Subdivision Map Act]." As Sixells admits, however, it "retained unto itself the decision [to] terminate the [contract] if any event [such as the recording of the map] did not occur." That Sixells had this power *but did not have to exercise it* allowed the Cannery to sell the parcel without the filing of the final map in violation of the Subdivision Map Act.

Fourth, Sixells contends that instead of declaring the contract void, we should sever the waiver language from the contract. In support of this proposition, Sixells cites *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669]. There, the California Supreme Court held that a mandatory arbitration clause signed by plaintiffs in preemployment application forms was unenforceable because the application contained so many unconscionable provisions that it was not possible to make the agreement enforceable by severing the offending provisions. (*Id.* at pp. 91, 123–124.) Sixells claims there is no such problem here because the trial court simply had to sever the waiver provision and "enforce the other provisions of the contract."

■ There are two problems with this analysis. One, the contract here cannot be seen as unconscionable to Sixells. It was drafted by Sixells for its benefit and was not a contract of adhesion—the first requirement for doctrine of unconscionability to apply and allow for severance of the unconscionable term. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th at p. 113.) Two, simply striking the term "waived" from the contract would not solve the problem. The remaining contract language would still allow the sale of an undivided parcel in violation of the Subdivision Map Act. Even striking the term "waived," Sixells had the option to go through with the contract if the final map was not recorded. Thus, the contract still would not comply with the Subdivision Map Act.

In sum, the contract here was drafted in violation of the Subdivision Map Act, it was void at its inception, and we cannot sever the waiver language to save the contract. The trial court therefore correctly sustained the demurrers without leave to amend.

II

*The Cannery, Tsakopoulos, and the C Street Investors Are Entitled to Attorney Fees and Costs on Appeal*

The Cannery, Tsakopoulos, and the C Street Investors argue that if they prevail on appeal, they are entitled to attorney fees and costs, as agreed to in the contract. They are correct.

The contract states, "If either party should commence litigation arising from, or related to, this Agreement, the prevailing party shall be entitled to

recover its attorney's fees and costs."[5] This court has interpreted clauses such as this to include recovery of attorney fees and costs on appeal. (See, e.g., *Villinger/Nicholls Development Co. v. Meleyco* (1995) 31 Cal.App.4th 321, 329 [37 Cal.Rptr.2d 36].) We will remand the matter to the trial court to determine those fees and costs. (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 388 [150 Cal.Rptr. 841].)

## DISPOSITION

The judgment is affirmed. The Cannery, Tsakopoulos, and the C Street Investors are entitled to their attorney fees and costs on appeal. (Cal. Rules of Court, rule 8.278(a).) The matter is remanded to the trial court to determine those fees and costs.

Nicholson, Acting P. J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 25, 2009, S170307.

---

[5] The trial court already ruled that although Tsakopoulos and the C Street Investors were not signatories on the contract, they are successors in interest and therefore entitled to attorney fees and costs under the contract. On appeal, Sixells does not argue otherwise.