[No. B198986. Second Dist., Div. Eight. Sept. 11, 2008.]

KYONG T. CHIN et al., Plaintiffs and Appellants, v.
TONY NAMVAR et al., Defendants and Respondents.

## Counsel

Henry M. Lee for Plaintiffs and Appellants.

Law Offices of Thomas H. Mabie, Thomas H. Mabie; and Robert B. Mobasseri for Defendants and Respondents.

## Opinion

## RUBIN, J.—

### INTRODUCTION

Appellant Kyong T. Chin was injured in May 2005 when he fell off a ladder while performing painting services at an Ontario shopping center known as Hollywood 28 (the shopping center). Although Chin at one time had been a licensed painting contractor, his license had expired in 2000, and he was not licensed at the time of injury. In January 2006, Chin and his wife filed a complaint naming as respondents Hollywood 28, L.L.C. (the limited liability corporation that owned the shopping center); Parviz Nadjat-Haiem (a partner in a business entity that owned one-half of Hollywood 28, L.L.C.); Tony Namvar (a partner in a business entity that owned the other one-half of Hollywood 28, L.L.C., and owner of Pentaco Management, Inc., which managed the shopping center); and Pentaco Construction Services, Inc. (collectively respondents).[1] The gist of the complaint was that Chin was respondents' employee at the time he was injured, and was entitled to wages and other compensation owed him. Also, as an employee for whom his employer had no workers' compensation coverage, he was entitled to recover for negligence. Finally he was wrongfully terminated. He claimed respondents' assertion that Chin was an independent contractor, not an employee, was only an attempt to avoid complying with the wage and hour and insurance provisions of the Labor Code.[2]

Following a nonjury trial, the trial court entered judgment against the Chins and in favor of respondents, finding that Chin was an independent

---

[1] The record on appeal for the most part refers to respondent Tony Namvar as "Numbar." Because respondent spelled his name for the reporter during the trial, we use that spelling in the case caption and throughout our opinion.

[2] In addition to Chin's Labor Code and other claims, Chin's wife sought recovery for loss of consortium.

contractor and not an employee. On appeal, the Chins' principal contentions are that the trial court erred by (1) ignoring Labor Code section 2750.5 (section 2750.5) which creates a rebuttable presumption that an unlicensed person who performs work requiring a license is an employee, not an independent contractor; (2) imposing on Chin the burden of proving that he was an employee; and (3) concluding that Chin was estopped to assert he was an employee.[3] We affirm.

## FACTS

Viewed in accordance with the usual rules on appeal, the evidence adduced at trial established the following.[4]

### A. *Respondent Namvar*

Respondent Tony Namvar testified that Hollywood 28, L.L.C., is a limited liability corporation in the real estate investment business; it owns two properties, one of which is the 43,000-square-foot shopping center where the injury occurred. Hollywood 28, L.L.C., has just two shareholders, each of which owns 50 percent of the company: Woodland Partners (Woodland) and The Carston Company (Carston). Namvar is one of eight partners in Woodland. Respondent Parviz Nadjat-Haiem is a partner in Carston. Namvar had been a managing member of Hollywood 28, L.L.C., since its inception.

Namvar is also president of Pentaco Management, Inc., which is responsible for hiring contractors to provide services at the shopping center.[5]

---

[3] The Chins also contend the trial court erred in (1) failing to find that respondents were joint employers; (2) applying Business and Professions Code section 7031, which precludes unlicensed contractors from bringing an action for compensation for the performance of work that requires a contractor's license; and (3) failing to enter judgment in Chin's favor on his unpaid wage and other claims. Since it is undisputed that Chin was performing work for which a license is required but was unlicensed, the trial court properly applied Business and Professions Code section 7031. (See *Filmore v. Irvine* (1983) 146 Cal.App.3d 649, 657 [194 Cal.Rptr. 319].) And since, as we explain, Chin was estopped from denying that he was an independent contractor, the claims arising out of his alleged status as an employee necessarily fail, and we need not decide whether respondents were joint employers.

[4] "In reviewing the evidence on appeal, we resolve all conflicts in favor of the prevailing party, and we indulge in all legitimate and reasonable inferences to uphold the finding if possible. Our power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the finding. When two or more inferences can be reasonably deduced from the facts, we cannot substitute our own deductions for those of the trial court. [Citation.]" (*Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 937 [59 Cal.Rptr.3d 37].)

[5] Namvar was familiar with Pentaco Construction Services, Inc. At the time of trial, it had been dormant for about a year. When it was operating, the company oversaw project management services. Pentaco Construction Services, Inc., never provided any management

Namvar oversees the managers who carry out the task of implementing the formal bidding process by which these contractors are selected. It is the duty of Pentaco Management, Inc., to make sure that the contractors who work at the shopping center are properly paid. The payments, however, are made by checks drawn on Hollywood 28, L.L.C., bank accounts.

It is the general business practice of Pentaco Management, Inc., to enter into written contracts with the contractors it hires, but Namvar could not find a written contract with Chin pertaining to the work at the shopping center. Namvar attributed this to the long business relationship he had with Chin. Chin was one of three bidders who participated in the bidding process for the contract to paint the shopping center exterior. Chin's handwritten bid for $7,941.35 was introduced into evidence as exhibit No. 101. Chin was awarded the contract in late 2003, early 2004. When accepting a bid from a new contractor (i.e., one with whom there is no prior business relationship), it is the usual practice of Pentaco Management, Inc., to obtain references and check license and insurance coverage. Namvar explained that this practice was not followed after Chin's bid was accepted because Chin had worked for Namvar on a number of projects over many years. Namvar recalled that he first hired Chin in 1995 or 1996 to paint a building in downtown Los Angeles.[6] At that time, Chin provided the usual information, including a valid contractor's license. It was not Namvar's practice to recheck the qualifications of contractors who worked for him over many years on different projects.

Namvar had IRS form 1099's reflecting that Chin was routinely treated as an independent contractor. The Hollywood 28, L.L.C., vendor list identified Chin as "KPC Painting," but Namvar understood that this was a "doing business as" and a sole proprietorship so Chin was paid with checks made payable to him personally. The 1099's were similarly in his name.

Namvar believed that Chin was trustworthy and would tell Namvar if his license was revoked. Chin said nothing about his license expiring. The first time Namvar learned that Chin was unlicensed was the week before trial,

---

services to Hollywood 28, L.L.C. There was no such company as "Pentaco Management Namco Capital Group, Inc." "Namco Capital Group, Inc." was a company owned by Namvar's brother and it was not affiliated with the Pentaco companies. In its statement of decision, the trial court clarified that respondent Pentaco Construction Services, Inc., is not the same as Pentaco Management, Inc., against whom Chin was pursuing a contemporaneous workers' compensation claim.

[6] According to the reporter's transcript, Namvar stated that this occurred in 1985 or 1986. But Namvar testified that he had an "eight to nine year relationship" with Chin. And Chin answered affirmatively when asked whether he heard Namvar testify that they first met to do a project in 1996. Thus, it appears that the reference in the reporter's transcript to 1985 or 1986 is erroneous.

when his lawyer showed him a document from the Contractors' State Licensing Board. Namvar would not have hired Chin on the shopping center project if he knew that Chin was no longer a licensed contractor.

Namvar recalled that, a few weeks after he heard that Chin had been injured, Chin came to Namvar's office on crutches and said he would be back on the job in a few weeks. Namvar told Chin to " '[j]ust go take care of yourself right now, and you can come back when you're done; and in the meantime, just clean everything that's out there so it's not in anybody's way.' [¶] So the next thing we saw was a lawsuit, and I don't know if that—that would be the time his services got terminated, but we never terminated him." After Chin filed suit, Namvar made other arrangements to complete the unfinished painting work.

## B. *Respondent Nadjat-Haiem*

Parviz Nadjat-Haiem testified that he is involved in Hollywood 28, L.L.C., only through his partnership in Carston. Although Nadjat-Haiem does not participate in the day-to-day operations of the shopping center, he is a signatory on the Hollywood 28, L.L.C., bank accounts and may have signed checks for daily business operations.

Pentaco Management, Inc., manages properties owned by Carston including the shopping center. Pentaco Management, Inc., has the authority to hire contractors and pays workers with checks drawn on the Hollywood 28, L.L.C., bank account.

Nadjat-Haiem recalled that he first met Chin "several years" prior to the May 2007 trial, when Chin made "some restorations or repairs in the restroom" of a building owned by Carston. Nadjat-Haiem had never checked licenses of people who performed work for him, nor did he ask Chin whether he was licensed; Nadjat-Haiem assumed Chin was in good standing. Nadjat-Haiem recalled that Chin did business under a separate name, but he did not know that name. Chin also "did some jobs as a contractor in my house . . . . [¶] . . . [¶] It was [on an] on-and-off basis. Sometimes he was there; sometimes he was not." When Nadjat-Haiem would ask Chin why he did not work on a particular day, Chin would explain that, as a contractor, he had other clients. Nadjat-Haiem did not buy tools or equipment for Chin, nor was he involved in setting Chin's hours or limiting his lunch breaks. Chin did not complain about his pay or that taxes should have been withheld.

Nadjat-Haiem was aware that Chin was performing painting services at the shopping center in 2004. He believed that Namvar was the person with the

final decisionmaking authority over Chin's work. Nadjat-Haiem's only involvement in the project was picking the paint color. He did not participate in negotiations but recalled that Chin gave an estimate for the work. He could not remember whether a written contract existed between any of the Pentaco companies and Chin, but he thought there was a written contract between Hollywood 28, L.L.C., and Chin. Nadjat-Haiem could not recall whether he had seen the agreement.

## C. *Appellant Kyong T. Chin*

Chin testified that in 1996 he was a licensed painting contractor doing business as KPC Painting. At that time, Chin began providing painting services to Namvar on several projects and Namvar paid KPC Painting for that work. In 2000, Chin allowed his painting contractor's license to lapse.[7] He closed KPC Painting and worked as a handyman—a job for which no license is required.

Chin testified that, in late 2001, Namvar introduced Chin to Nadjat-Haiem. After Chin did a few handyman projects for Nadjat-Haiem, Chin accepted Nadjat-Haiem's offer to pay him $3,500 a month ($1,750 every two weeks) in exchange for Chin working exclusively for Nadjat-Haiem. Although there was no written contract, from 2001 through 2004 Chin worked exclusively for Nadjat-Haiem and Namvar on various properties including their personal residences. On the occasions when Chin used his own money to purchase supplies, Nadjat-Haiem reimbursed him. Even when he worked at Namvar's residence, and even though Chin was paid with checks from different business entities, Chin understood that he was always Nadjat-Haiem's employee. During this time, Chin consistently worked six days a week, 10 hours a day without any extended breaks and just 10 minutes for lunch. Chin denied performing handyman services for anyone else other than Nadjat-Haiem and Namvar, and denied receiving IRS form 1099's.

In 2004, Chin began performing handyman services at the shopping center. He discussed his work with Namvar who signed Chin's Hollywood 28, L.L.C., paychecks. Chin understood that he was an employee of Hollywood 28, L.L.C. He was familiar with a company called Pentaco; he understood that Namvar was somehow related to Pentaco and that Hollywood 28, L.L.C., and Pentaco

---

[7] Chin testified that he lost his painting contractor's license in 2000 because the paperwork in English—Chin testified with a Korean interpreter—was too much for him to handle. Earlier at his deposition, Chin testified that his license had been suspended because of something his son did.

were also related.[8] While Chin worked at the shopping center, Nadjat-Haiem and his secretary came by every two weeks to "check from a distance and then leave." Another man used to come every day.

During his work at the shopping center, Chin was asked to give painting estimates, including materials, labor and how long the job would take to complete. Chin provided the estimate (trial exhibit No. 101). Chin did not believe this "estimate" was a "bid"; he was not competing for the job against other painting contractors. Chin knew that he was no longer a licensed painting contractor, and that he could not get paid for doing the work of a licensed painting contractor. At Nadjat-Haiem's instruction, Chin hired workers to help out but Nadjat-Haiem paid these workers.

On May 5, 2004, Chin was climbing a ladder at the shopping center when he fell and broke his leg.[9] At the time of his injury, Chin did not have a painting contractor's license and was working as Nadjat-Haiem's employee.

Two weeks after his injury, Chin was still on crutches when he and his wife went to Pentaco's office to ask for Chin's salary. Nadjat-Haiem told them that Chin would not get paid until his wife cleaned the gum off the floor. Chin also asked for Pentaco's insurance information but Namvar said he would not provide the information because of the negative impact it would have on Pentaco's premiums. At that same meeting, Namvar terminated Chin's employment. Chin's claim for workers' compensation was denied.

## PROCEDURAL BACKGROUND

Chin filed a complaint for discrimination with the Department of Fair Employment and Housing on May 5, 2005, in which he alleged that Namvar and Nadjat-Haiem fired him because of his physical disability and because he protested illegal activity. After obtaining a right-to-sue notice, Chin and his wife filed the instant action on January 24, 2006. The complaint alleged causes of action for unfair competition, various Labor Code violations,

---

[8] As on the previous projects, Chin worked 10 hours a day, six days a week at Hollywood 28. For this work, Chin was paid with checks from Hollywood 28, L.L.C. These checks were dated February 10, 2004; February 17, 2004; March 4, 2004; April 8, 2004; April 20, 2004; and May 11, 2004. The February 17 and April 20 checks were for $1,500. The other four were of differing amounts ranging from $500 to $2,000.

[9] Chin testified that the ladder from which he fell and the scaffolding onto which he fell were provided by Nadjat-Haiem; Chin never provided any materials for that job. At his deposition, Chin testified that he brought his own ladder and scaffolding to the jobsite. At trial, Chin said the deposition transcript was incorrect and he clarified that he brought the ladder and scaffolding from where they were stored to the jobsite.

wrongful termination and negligence, and included a claim by Chin's wife for loss of consortium. Following a three-day nonjury trial, the trial court ruled in favor of respondents. In its statement of decision, the court found that Chin worked at the shopping center as an independent contractor, not an employee of any of the respondents.[10] Because each of Chin's causes of action rested on the premise that Chin was an employee, each cause of action necessarily failed, as did his wife's.

Judgment was entered on March 21, 2007. An amended judgment was filed on April 6, 2007, which added an award of attorney's fees to respondents on the second, fourth, and fifth causes of action pursuant to Labor Code section 218.5, and on the 10th and 11th causes of action pursuant to Government Code section 12965, subdivision (b). Chin filed a timely notice of appeal.

## DISCUSSION

A. *Section 2750.5*

Appellants contend the trial court erred in concluding that section 2750.5 was not applicable. As we understand Chin's argument, there was insufficient evidence to support the finding that he was an independent contractor because, under section 2750.5, the undisputed evidence was that Chin was performing painting services for which a license was required, but Chin had no license; therefore, by law, he was an employee. We disagree.

1. *Standard of Review*

We begin with the appropriate standard of review: in determining whether the trial court properly applied section 2750.5, we review the trial court's statutory interpretation de novo and its factual determinations for substantial evidence. (*Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 232 [130 Cal.Rptr.2d 581].)

2. *Statutory Scheme*

■ Section 2750.5 establishes "a rebuttable presumption affecting the burden of proof that a worker performing services for which a [contractor's]

---

[10] The trial court noted that in the workers' compensation proceedings against Pentaco Management, Inc., Chin testified that he was an employee of Pentaco Management, Inc.; the court expressly made "no finding as to whether [Chin] was an employee of Pentaco Management, which is not a party to this litigation and against which [Chin] has a workers' compensation claim."

license is required . . . is an employee rather than an independent contractor." (See *Ramirez v. Nelson* (2008) 44 Cal.4th 908 [80 Cal.Rptr.3d 728, 188 P.3d 659] [unlicensed contractor who becomes injured on the job is the employee of the party who hired him, not an independent contractor, for purposes of determining eligibility for workers' compensation benefits].) Section 2750.5, subdivisions (a), (b), and (c) describe the proof that may satisfactorily rebut the presumption.[11] The penultimate paragraph in section 2750.5 provides: "In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a [contractor's] license is required . . . shall hold a valid contractors' license as a condition of having independent contractor status." In other words, under the statute, the presumption of employee status can be rebutted only as to persons who hold a valid contractor's license; the presumption cannot be rebutted as to persons who do not hold a valid contractor's license. (See *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 77 [47 Cal.Rptr.3d 310] [presumption that a person who hires an unlicensed contractor is an employer is conclusive].)

### 3. *Estoppel*

 Notwithstanding the conclusive presumption established by the second to last paragraph of section 2750.5, one who misrepresents himself as a licensed contractor is estopped from asserting that his unlicensed status makes him an employee under the statute. (*Rinaldi v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 217, 223 [244 Cal.Rptr. 637] (*Rinaldi*).) "The essence of an estoppel is that the party to be estopped has by false language or conduct 'led another to do that which he would not otherwise have done and as a result thereof that he has suffered injury.' [Citation.]" (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd. (Meier)* (1985) 40 Cal.3d 5, 16 [219 Cal.Rptr. 13, 706 P.2d 1146] (*Meier*).) In the absence of a representation by the contractor that he or she is licensed, there can be no

---

[11] Section 2750.5 provides in part: "Proof of independent contractor status includes satisfactory proof of these factors: [¶] (a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for. [¶] (b) That the individual is customarily engaged in an independently established business. [¶] (c) . . . [T]he presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work . . . , hiring employees, performing work that is not ordinarily in the course of the principal's work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract."

estoppel. (*Meier, supra*, at p. 16; see also *Travelers Ins. Co. v. Workers' Comp. Appeals Bd.* (1983) 147 Cal.App.3d 1033, 1038 [195 Cal.Rptr. 564] [same].)

In *Meier*, Meier had held a general contractor's license until 1969 when he went bankrupt; after that, he did concrete work, carpentry and job estimates. Using his brother's license, Meier built a home for Leon, and Leon recommended him to Chichester to help Chichester with a room addition. Chichester did not ask Meier whether he was licensed and Meier did not say that he was not. While doing the remodel, Meier fell and sustained injuries that left him a quadriplegic. Concluding that Meier was an independent contractor, not an employee, Chichester's insurer refused to pay Meier any benefits. The workers' compensation judge found that, under section 2750.5, the defense proffered by the workers' compensation carrier that Meier was an independent contractor was not available because Meier was doing work that required a license. (*Meier, supra*, 40 Cal.3d at p. 8.) The relevant issue on appeal was whether, by failing to disclose that he was not licensed when he contracted for the job, Meier should be estopped from denying that he was an independent contractor. Our Supreme Court affirmed the workers' compensation ruling, reasoning: ". . . Meier at no time represented that he held a valid contractor's license and . . . there was no reliance on any such representation. . . . [¶] Moreover, State Fund has failed to establish that as a matter of law Chichester was misled and would not have entered into the agreement if he had been aware that Meier was unlicensed." (*Id.* at p. 16.)

In contrast to *Meier* is *Rinaldi*: There, homeowners contracted with Smyth, a licensed but uninsured contractor, to remodel their home. Smyth contracted with Butler, who falsely represented himself as a licensed contractor, to finish the job; Butler was also uninsured. Butler hired Zagainoff to do some rough framing; Zagainoff suffered multiple injuries when he fell nine feet to a concrete floor. In a claim filed with the Uninsured Employers Fund (the fund), Zagainoff alleged that both Smyth and Butler were his employers. The fund settled with Zagainoff, reserving its reimbursement rights against the employer. Following a hearing, the workers' compensation judge found that Zagainoff was an employee of Butler, not Smyth. The judge reasoned that Butler had misrepresented his status as a licensed contractor, as a result, he was estopped from denying that he was an independent contractor; Smyth was dismissed as a party defendant. In a petition for reconsideration to the Workers' Compensation Appeals Board (WCAB), the fund contended that Zagainoff was an employee of Smyth as a matter of law. The board affirmed the judge's findings. (*Rinaldi, supra*, 199 Cal.App.3d at p. 220.) The appellate court found that Butler's false representation estopped Butler from denying his independent contractor status. "[T]he evidence of estoppel against Butler is overwhelming. Butler falsely represented that he had two

contractor's licenses when, in fact, his license was under suspension. Smyth testified that he would not have entered into the agreement with Butler if he had been aware that Butler was unlicensed. The facts of this case, as found by the [workers' compensation judge and WCAB], establish all the elements of estoppel against Butler. [Citation.]" (*Id.* at p. 223.)[12]

## B. *Substantial Evidence Supported the Trial Court's Estoppel Findings*

██ Whether a party's conduct estops it from taking a particular legal position usually, though not always, involves a factual determination. "The existence of an estoppel is generally a question of fact, and the party relying on the estoppel must prove all of the elements." (*Meier, supra,* 40 Cal.3d at p. 16.) Occasionally, a court may rule on estoppel as a matter of law. (See *General Accident Ins. Co. v. Workers' Comp. Appeals Bd.* (1996) 47 Cal.App.4th 1141, 1149 [55 Cal.Rptr.2d 272].) We acknowledge that it is difficult to create a hard and fast rule for every situation in which the status of a contractor's license changes over a period of time. On the one end of the spectrum might be the following: worker affirmatively lies when asked if he is licensed, commences work, and shortly thereafter is injured. These were essentially the facts discussed in *Rinaldi*. We agree that in the absence of extenuating circumstances, the unlicensed worker in this setting is estopped from claiming employee status.

On the other end of the spectrum: the hirer does not inquire and the worker makes no representation about his licensing status. In this situation, in order to effect the mandatory language of the penultimate paragraph of section 2750.5, the unlicensed worker cannot be estopped, and is deemed an employee. This is akin to *Meier* which suggests estoppel in this context may be a matter of law. (See *Meier, supra,* 40 Cal.3d at p. 16.) To apply estoppel in this setting would convert estoppel from a defense to the rule.

---

[12] In *Rinaldi*, the precise question for the court was whether the unlicensed subcontractor's (Butler) estoppel extended to his injured employee (Zagainoff) as against the general contractor (Smyth). The Court of Appeal held it did not; it found Smyth was the ultimate hirer and that the fund could proceed against Smyth to recover monies paid to Zagainoff under the settlement agreement. (*Rinaldi, supra,* 199 Cal.App.3d at pp. 223–224; see *Hunt Building Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 220 [93 Cal.Rptr.2d 883] [general contractor is employer of its unlicensed subcontractors as well as of those employed by the unlicensed subcontractors].) We are not faced with a similar situation here, as there is no injured "Zagainoff" in the present case. Chin is the unlicensed contractor, it was Chin who misrepresented the status of his contractor's license by omitting to tell respondents that his license had lapsed, and it was Chin who was injured. We conclude the *Rinaldi* court's comments about Butler being estopped apply here.

The gray part of the spectrum is presented by the worker who initially accurately informs the hirer that he or she is licensed but over time his or her license expires or is revoked, the worker says nothing, and the employer makes no further inquiry. In this situation, our case being an example, estoppel becomes a factual question to be resolved by the trier of fact. We uphold that determination if supported by substantial evidence. (See *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360 [56 Cal.Rptr.3d 591].) Relevant factors include the nature of the worker's initial disclosure and the hirer's initial inquiry, the length of time the license was valid and how long since it had lapsed, the parties' expectations, the nature and length of the relationship between worker and hirer, and custom and practice in the industry, among others. It may be reasonable for a hirer to assume a worker remains licensed when the valid license was presented a few weeks before the start of work. It may be unreasonable to require written proof on a weekly or monthly basis on a long project. On the other hand, oral representation of valid license status, though reasonable to accept at the time, may require further investigation, even written proof, later on depending on the circumstances.

■ The burden is on the hirer to prove that the worker is estopped from claiming employee status. This is in keeping with estoppel being a defense (*Meier, supra,* 40 Cal.3d at p. 16), and with the language and purpose of section 2750.5. It is also consistent with evidentiary realities. Usually, it will be the hirer who claims he or she was misled by the worker and is excused from the legal effect of the absence of a contractor's license. The hirer knows what those mitigating factors are.

Here, the trial court reasonably found respondents met that burden. There was no dispute that Chin was a licensed painting contractor doing business as KPC Painting when he first began work for Namvar in 1996, and no dispute that Namvar, at the time he first hired Chin, discussed with Chin that the latter was licensed. There was also no dispute that Chin continued to provide painting services to Namvar on a number of different projects over the next several years. Namvar testified that he believed Chin would advise him of any license expiration but Chin said nothing. Namvar testified that Chin was one of several bidders for the contract to paint the shopping center. Namvar would not have awarded Chin the contract to paint the shopping center if he knew that Chin was no longer licensed. This was consistent with respondent's business practices of checking license status and not hiring unlicensed contractors.

During the time he worked at the shopping center, Chin testified that Nadjat-Haiem and his secretary came by every two weeks to check on the progress of the work "from a distance and then leave." And there was evidence that Chin brought his own ladder and scaffolding to the jobsite. Thus, there was evidence that Chin was in fact engaged in an independently established painting business (§ 2750.5, subd. (b)); Chin had the "right to control and discretion as to the manner of [the] performance" of the painting work which he contracted to do (§ 2750.5, subd. (a)); Chin had held himself out as a licensed painting contractor, bargained for the contract to paint the shopping center, and supplied the tools used in that work (§ 2750.5, subd. (c)). This evidence was sufficient to support the finding that Chin was an independent contractor. (Cf. *Torres v. Reardon* (1992) 3 Cal.App.4th 831, 837 [5 Cal.Rptr.2d 52] [gardener injured while tree trimming was independent contractor where undisputed evidence was that he provided tree-trimming service in course of his independently established business, supplied his own equipment and did not discuss with homeowners means by which tree trimming was to be done].)

■ This evidence was also sufficient to support the finding that Chin was in fact an independent contractor and that he is estopped from denying otherwise. This case is in stark contrast to *Meier*, where the injured worker "at no time represented that he held a valid contractor's license and . . . there was no reliance on any such representation." (*Meier, supra*, 40 Cal.3d at p. 16.) Here, respondents knew Chin was at one time licensed, and Chin failed to disclose to respondents that the license had since lapsed. The trial court reasonably could have found that respondents understandably relied on Chin to their detriment.

■ Chin's citation to *Zellers v. Playa Pacifica, Ltd.* (1998) 61 Cal.App.4th 129 [70 Cal.Rptr.2d 919] (*Zellers*), for a contrary result is misplaced. In *Zellers*, a property owner hired a licensed contractor and the licensed contractor hired Zellers to help with the work. Shortly thereafter, the contractor's license expired and three weeks later, Zellers was injured on the job. After the property owner's insurance carrier paid Zellers's workers' compensation claim, Zellers "switched hats, decided he was an independent contractor and not the owner's employee, and sued the owner for tort damages. The trial court granted the owner's motion for summary judgment, finding that Zellers's exclusive remedy was under the Workers' Compensation Act." (*Id.* at p. 131.) The appellate court affirmed, but it did not consider application of estoppel. " 'A decision, of course, does not stand for a proposition not

considered by the court.' [Citation.]" (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1299 [50 Cal.Rptr.3d 27].)

We turn next to whether the trial court improperly placed the burden of proof on this issue on Chin.

### C. The Trial Court Did Not Improperly Impose on Chin the Burden of Proving He Was an Employee

█ In *Meier,* our Supreme Court "placed the burden of determining the worker's license status squarely on the [hirer] and in the absence of a misrepresentation by the contractor as to license status, the unlicensed contractor cannot be estopped from denying independent contractor status and claiming benefits as an employee." (*Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 820 [79 Cal.Rptr.2d 339].)

Chin contends the trial court improperly imposed upon him the burden of proving that he was an employee. He points to the written statement of decision which states in part: "Plaintiff did not establish that he was an employee of any defendant at the time of his accident or otherwise." "Since Plaintiff did not prove he was an employee of any defendant, his first through seventh causes of action fail because they rely on the finding that defendants violated the wage and hour laws." We disagree.

On appeal, we presume the judgment is correct and indulge all intendments and presumptions in favor of its correctness. (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1251 [76 Cal.Rptr.3d 632].) Applying that general rule, we conclude that, while the language quoted by Chin was inartful, the statement of decision as a whole does not establish that the trial court improperly imposed the burden of proof on Chin. On the contrary, the trial court's statements reflect it found respondents credible and Chin not: it did not believe Chin's testimony that he allowed his license to expire because he became employed by respondents; it did not believe Chin's testimony that trial exhibit No. 101 was not a bid; and it did not believe Chin's testimony that respondents controlled the manner and hours of Chin's work. By implication, the trial court believed respondents' contrary evidence. Chin has not established that the trial court misplaced the burden of proof, and, since substantial evidence supported the trial court's finding, we affirm the judgment.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs.

Cooper, P. J., and Flier, J., concurred.