Filed 1/5/15  Stevens v. Multibank 2009-1 RES-ADC Venture CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANDREW E. STEVENS,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MULTIBANK 2009-1 RES-ADC<br>VENTURE, LLC,<br><br>  Defendant and Appellant. | G049835<br>(Consol. with G049833 &<br> G049839)<br><br>(Super. Ct. No. INC079716)<br><br>O P I N I O N |

Appeals from orders and a judgment of the Superior Court of Riverside County, Randall D. White, Judge.  Motion to dismiss appeal.  Motion granted in part and denied in part.  Appeals from orders dismissed.  Judgment affirmed as modified.

Miltner, Polk & Menck, William L. Miltner and Teresa L. Polk; Katten Muchin Rosenman, Steve Cochran, Joshua D. Wayser and Rebecca F. Ganz for Defendant and Appellant.

Nethery & Ofseyer, D. Martin Nethery and Jeremy J. Ofseyer; Mueller/Olivier/Whittaker, Martin A. Mueller and Julie A. Rosser for Plaintiff and Respondent.

*          *          *

These consolidated appeals arise from multiparty litigation concerning an unsuccessful real estate development project. Plaintiff Andrew E. Stevens sued numerous parties, including 1st Centennial Bank (1st Centennial), to establish the priority of his interest in a portion of the land. He obtained a preliminary injunction prohibiting, 1st Centennial from conducting a trustee's sale or otherwise transferring or encumbering the property in which he claimed to have an interest. During the litigation the Federal Deposit Insurance Corporation placed 1st Centennial into receivership and assigned its interest in the property to defendant Multibank 2009-1 RES-ADC Venture, LLC. The trial court denied defendant's motion to dissolve the preliminary injunction. Defendant's first appeal is from the latter ruling. (Case No. G049835.) Plaintiff has moved to dismiss the appeal from this order on several grounds, including mootness.

The court conducted a nonjury trial divided into three phases. The first and second phases concerned the causes of action in plaintiff's amended complaint, which sought quiet title, declaratory relief, and injunctive relief against defendant and several parties collectively identified as the Shenandoah entities and alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance, against the Shenandoah entities. The trial's third phase concerned defendant's claims for damages from one of the Shenandoah entities.

After trial on phases one and two, the court issued a statement of decision and an interlocutory judgment for plaintiff on all of his causes of action. Defendant appealed from the portion of this judgment for plaintiff on the quiet title, declaratory relief, and injunctive relief claims. (Case No. G049833.) Although denominated an interlocutory judgment, for the purpose of deciding whether it is appealable, we look to see whether it is final in substance and effect. (*Lyon v. Goss* (1942) 19 Cal.2d 659, 669-670.) Here, the interlocutory judgment had the effect of resolving all of the issues between plaintiff and defendant and thus is appealable. (Code Civ. Proc., § 577; *Wilson*

2

*v. Sharp* (1954) 42 Cal.2d 675, 677; *Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 454.)

Thereafter, the court denied defendant's motion to strike plaintiff's memorandum of costs and awarded him nearly $38,000. Defendant also filed an appeal from this order. (Case No. G049839.)

Defendant now acknowledges its appeal from the postjudgment ruling awarding costs is moot and based on this concession we dismiss the appeal from that order. We also agree defendant's appeal from the denial of the motion to dissolve the preliminary injunction is moot and grant plaintiff's motion to dismiss the appeal from this ruling. However, we deny his motion to the extent it seeks to dismiss the appeal on other grounds and his requests for attorney fees and sanctions. While we affirm the judgment, we shall direct that it be modified to clarify the procedure to be followed if plaintiff fails to timely create a lawful parcel on the remaining commercial property. (Code Civ. Proc., § 43; *Goldsworthy v. Dobbins* (1952) 110 Cal.App.2d 802, 810.)

FACTS AND PROCEDURAL BACKGROUND

The evidence presented at trial established the following relevant facts. Plaintiff owned land in an unincorporated area of Riverside County adjacent to Varner Road. He obtained county approval of tentative tract maps referred to as maps 29150 and 29151. The latter map depicted an existing golf course, parcels for potential residential development, and a strip of land along Varner Road with designations indicating it was zoned for commercial uses.

In September 2001, plaintiff signed an agreement to sell the property depicted in maps 29150 and 29151 to Shenandoah Springs LLC's (SSLLC) predecessor in interest. The agreement's recitals state the buyer's intent was to develop over 300

3

residential lots on the property. The purchase price was specified as $9,756.10 for each residential lot "contained within the Property upon recordation of final tract maps," with a proviso the price would be "adjusted" in the event "the number of actual [l]ots contained within the Tracts upon the recordation of the Final Maps differs from the number estimated . . . ." Ronald Safren, a principal of the Shenandoah entities, signed the sale contract on behalf of the buyer.

Safren testified the purchase price did not include the value of the golf course or the portion designated as commercial property on map 29151. He explained however that the purchase agreement referenced the entire parcel "because under the Subdivision Map Act . . . you have to split the property to create legal entities that can be recorded, and this tract map was overlaid on one parcel that was all in one piece. And there was no way that we could split it off."

On April 22, 2002, before the sale agreement's escrow closed, Safren signed a letter to plaintiff and the escrow holder that stated: "Please be advised that if there is any property conveyed to [SSLLC] through the closing of the above referred to Escrow that is outside the Tentative Tract number 29150 pages 1 and 2 and 29150 pages 1 and 2, then [SSLLC] agrees to deed any such property back to [plaintiff] . . . ." Plaintiff also signed the letter below the phrase, "Received and acknowledged." Both Safren and plaintiff testified the second reference to tract number 29150 was a typographical error and that it should have referred to tract number 29151. Safren explained this ambiguously phrased letter "memorializ[ed] my understanding with [plaintiff] regarding returning to him any land that's beyond the residential lots."

To complete development of the residential lots and to create final subdivision maps, the Shenandoah entities obtained a loan from 1st Centennial secured by the parcels depicted in maps 29150 and 29151 in 2004. They refinanced the loan with 1st Centennial in 2006.

4

Safren and the Shenandoah entities' other principals, Cary Safren and Ronald Edwards, testified that when negotiating both loans with 1st Centennial's vice-president for real estate lending, Clifford Schoonover, they mentioned their obligation to reconvey a portion of the property to plaintiff. Cary Safren and Edwards also testified Sandra Parmer, a loan processor with the bank, was present at a meeting on the 2006 loan. To corroborate this testimony, plaintiff introduced preliminary commitment letters for the 2004 loan that Schoonover had signed. The letters included a statement the bank's approval was "subject to the receipt of an appraisal" showing "[t]he retail LTV [loan-to-value] shall not exceed 65% of the bulk value of [the] . . . finished lots."

Both Schoonover and Parmer denied discussing plaintiff's interest in the property during the loan negotiations. But on cross-examination, Schoonover acknowledged sending Safren the commitment letters and that on one occasion he told Safren the bank "would consider the collateral for residential only." Parmer testified 1st Centennial limited construction loans to 65 percent of the collateral's appraised value and an appraisal for the 2006 loan reflected the loan amounted to 65.17 percent of the value of the residential portion of the property alone.

On March 27, 2006, after 1st Centennial approved the second loan, but before funding it and closing escrow, Parmer received a preliminary title report that reflected title to the property was vested in the names of both plaintiff and Shenandoah Springs Development Company, Inc. (SSDC). She circled that part of the report and faxed it to Edwards. A few hours later, Edwards sent Parmer a fax that contained a copy of Safren's April 22, 2002 letter and a copy of a page from a 2005 amendment to escrow instructions that stated as follows: "Upon the recording of the complete final maps numbers 29150 and 29151 . . ., Shenandoah Springs, Inc. will deed to [plaintiff] simultaneously any real property with legally recordable legal descriptions which belong

5

to [plaintiff], that lies outside Tract Maps No. 29150 and 29151, which were deeded to [SSLLC] . . . and as per letter to [plaintiff] dated April 22, 2002, attached hereto . . . ."

Parmer testified she did not remember looking at the latter fax's attached documents, but admitted she must have received it because the cover page contained her handwriting. She also acknowledged that had she seen these documents she would have shown them to Schoonover. Although he also denied seeing Edwards' fax, Schoonover admitted "it would have raised a red flag." The deed encumbering the property for the 2006 loan was filed April 4. It named only SSDC as the trustor.

In August 2006, the Shenandoah entities recorded a lot line adjustment and grant deed for a portion of the property depicted on map 29151. One lot established by this recording, identified as Parcel A, covered a portion of map 29151 that was designated as zoned for commercial use.

In 2007, plaintiff entered into contract with another Shenandoah entity, The Club at Shenandoah Springs, Inc., to sell a portion of his interest in the golf course. The parties' amended contract contained a paragraph declaring SSLLC and SSDC "confirm[ed] . . . they are obligated to re-convey . . . the Commercial Property to [plaintiff] . . . as evidenced by that certain letter agreement . . . dated April 22, 2002," and that SSLLC and SSDC would "convey . . . the Commercial Property to [plaintiff] no later than three (3) years from the Closing [i.e., June 15 2010]."

The next year, SSDC defaulted on the 2006 loan. 1st Centennial recorded a notice of default and election to sell the property covered by the trust deed. Plaintiff filed this action, and obtained a preliminary injunction prohibiting 1st Centennial from proceeding with the foreclosure sale. Defendant moved to dissolve the preliminary injunction, but the court denied the motion.

At the completion of the trial's first and second phases, the court issued a statement of decision and ruled in plaintiff's favor. In support of this ruling the court

6

made the following findings. The contract between plaintiff and the Shenandoah entities "consisted of a number of documents," which included the original purchase agreement, the April 2002 letter, the 2005 escrow instruction, and the 2007 amended purchase and sale agreement. "[T]he intent of the agreement . . . was that the reconveyance of the property would take place after legally[]subdivided parcels were created for . . . the Commercial Property." Thus, "the contract . . . did not violate the Subdivision Map Act in any respect." In addition, 1st Centennial either knew of plaintiff's interest in the property or had received "notice of circumstances sufficient to put a prudent person on inquiry as to [his] interest" and "reasonable pursuit of such inquiry . . . would have resulted in its learning of [plaintiff's] interest." Thus, 1st Centennial "was not a bona fide encumbrance for value without notice" when the bank "acquired its 2004 encumbrance or its 2006 encumbrance."

The court also ruled Parcel A, which was created by the August 2006 lot line adjustment, "is a lawful parcel which satisfies the Subdivision Map Act." But it found "[t]he balance of the Commercial Property has not been lawfully[]subdivided" and thus "retain[ed] jurisdiction . . . to allow Stevens and/or the Shenandoah Defendants to engage in the necessary process to create a lawful parcel."

The interlocutory judgment awarded plaintiff "Fee Simple Absolute title to, and possession of" Parcel A. As for the remainder of the commercial property, the court declared plaintiff "is entitled to Fee Simple Absolute title . . ., subject to said property . . . being lawfully-created, consistent with County of Riverside requirements and approval," and gave plaintiff "two years from the date of entry of this judgment to take such actions as are necessary and appropriate to cause to be created a lawful parcel . . . ." The judgment enjoined defendant from seeking to foreclose on the commercial property parcels or interfering with plaintiff's efforts to create a lawful parcel

7

on the remainder of the commercial property, and also directed to "execute such documents as may be necessary or appropriate to carry out this judgment."

DISCUSSION

*1. The Statute of Frauds*

Defendant challenges the trial court's judgment on the ground plaintiff's original agreement with the Shenandoah entities did not contain a description of the property to be reconveyed to him that satisfied the statute of frauds.

Initially, we question whether defendant can assert this claim. Generally, "the statute of frauds can be invoked only by the parties" to the agreement and "is not available to third persons" unless they are in privity with one of the contracting parties. (*Demeter v. Annenson* (1947) 80 Cal.App.2d 48, 57; see *O'Banion v. Paradiso* (1964) 61 Cal.2d 559, 562.) This rule protects against third parties lacking privity from "invalidat[ing] contracts which the parties themselves were in favor of enforcing." (*O'Banion v. Paradiso, supra,* 61 Cal.2d at p. 563; see *Mitchell v. Locurto* (1947) 79 Cal.App.2d 507, 512-513 ["It would seem to be the rule that third parties cannot avail themselves of the defense of the statute if the two principals acquiesce"].) Both plaintiff and the principals of the Shenandoah entities acknowledged they agreed to a reconveyance of the commercial property upon the recording of a final map and defendant has made no attempt to establish it qualifies for the exception to this rule.

But even on the merits, defendant's statute of frauds claim fails. Civil Code section 1624, subdivision (a)(3) declares "[a]n agreement . . . for the sale of real property, or of an interest therein" is "invalid, unless" the contract "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged . . . ." "A description [of real property] fulfills the test of reasonable certainty [for the statute of

8

frauds] if it furnishes the 'means or key' by which the description may be made certain and identified with its location on the ground. [Citation.] In this regard, '[c]ourts have been most liberal in construing executory contracts for the sale of real estate and have sought, as far as is consistent with the above established rules, to give effect to the intention of the parties in applying descriptions to property.'" (*Alameda Belt Line v. City of Alameda* (2003) 113 Cal.App.4th 15, 21.)

In the *Alameda Belt Line* case, the city sold a municipal railroad to the plaintiff. A clause in the agreement gave the city the option to repurchase "'said belt line railroad including all extensions thereof.'" (*Alameda Belt Line v. City of Alameda, supra,* 113 Cal.App.4th at p. 19.) When the city sought to enforce the repurchase option, the Court of Appeal held the clause's language satisfied the statute of frauds. "[T]he contractual language, 'said belt line railroad including *all extensions thereof*,' (italics added) is a sufficient 'means or key' by which extrinsic or parol evidence could be used to define the property which is the subject of the option." (*Id.* at p. 22.)

The same is true here. The trial court found the reconveyance agreement established by the terms of several documents. These documents clarified that the Shenandoah entities purchased plaintiff's property to develop only the residential portion of it. Plaintiff had obtained approved tentative tract maps, but for the Shenandoah entities to proceed with their development of the residential parcels, it was necessary to create and obtain approval for final tract maps that established the existence of legally recordable lots. In accomplishing this task, the Shenandoah entities agreed to create and record final maps and then reconvey to plaintiff legally recordable lots along Varner Road that were zoned for commercial uses.

Defendant focuses on individual documents such as the tentative tract map and the 2002 letter to support its claim the description of the commercial property was fatally inadequate. But here, the trial court relied on several additional documents to

establish the existence of the reconveyance agreement.  It properly did so.  "[I]t is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract. . . .  The documents need not be executed contemporaneously."  (*Nevin v. Salk* (1975) 45 Cal.App.3d 331, 338; see Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].)  The question of "whether several writings comprise one transaction" presents "a question of fact," which we review for substantial evidence. (*Nevin v. Salk, supra,* 45 Cal.App.3d at p. 338.)

Defendant also argues the trial court erred by considering the 2007 amended agreement between plaintiff and The Club at Shenandoah Springs, Inc. to establish the existence of the reconveyance clause because that agreement was prepared after the recording of 1st Centennial's 2006 trust deed.  The court's statement of decision recognized this document was subsequent to the 2006 encumbrance, but noted it merely confirmed the reconveyance obligation to which plaintiff and the Shenandoah entities had previously agreed.  Thus, it found plaintiff's "interest in the property existed, and 1st Centennial had knowledge and notice of it sufficient to constitute actual or constructive notice, prior to the creation of the . . . encumbrance."

Further, defendant's attack on the trial court's consideration of parol evidence to eliminate any ambiguity is unavailing.  "[W]hen ambiguous terms in a memorandum are disputed, extrinsic evidence is admissible to resolve the uncertainty." (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 767.)  In deciding whether an agreement satisfies the statute of frauds, parol evidence "cannot *supply*" an "essential contractual term[]" (*ibid*.), but it "is admissible to identify the property mentioned in a written agreement" (*Alameda Belt Line v. City of Alameda, supra,* 113 Cal.App.4th at p. 21) and "can . . . be used to *explain* essential terms that were understood by the parties but would

10

otherwise be unintelligible to others" (*Sterling v. Taylor, supra,* 40 Cal.4th at p. 767). The testimony at trial concerning which parcels the Shenandoah entities would reconvey to plaintiff was consistent with the terms of the documents identified by the court as the reconveyance agreement.

We conclude defendant's statute of frauds claim lacks merit.

## 2. *The Subdivision Map Act*

Citing only the 2002 letter agreement and the 2005 escrow amendment, defendant claims the reconveyance agreement is void because it amounted to merely an agreement to sell unsubdivided property and was not expressly conditioned on the recording of a final map. Plaintiff responds by quoting the language of the 2005 escrow amendment, arguing it "expressly makes clear . . . that the required reconveyance . . . was to occur upon the recording of the complete final maps – that is, that the only property that could be reconveyed was that property with legally recordable legal descriptions."

We agree with plaintiff's argument. The Subdivision Map Act (Gov. Code, § 66410 et seq.; SMA) generally invalidates any contract to "sell, lease, or finance any parcel or parcels of real property . . . for which a final map is required by this division or local ordinance, until the final map thereof in full compliance with this division and any local ordinance has been filed for record by the recorder of the county in which any portion of the subdivision is located." (Gov. Code, § 66499.30, subd. (a); see *Black Hills Investments, Inc. v. Albertson's, Inc.* (2007) 146 Cal.App.4th 883, 896 ["contracts . . . illegal under the SMA [are] as a matter of public policy . . . void, not voidable"].)

But an exception to this rule applies where a "contract to sell . . . is expressly conditioned upon the approval and filing of a final subdivision map or parcel map, as required under this division." (Gov. Code, § 66499.30, subd. (e).) Plaintiff

11

argues the reconveyance agreement satisfied the exception. The trial court so found and we agree with its conclusion. The 2001 purchase and sale contract contained several references to the need to complete "final recorded tract maps." The 2005 escrow amendment expressly conditioned the Shenandoah entities' obligation to reconvey the commercial property "[u]pon the recording of the complete final maps." (Capitalization omitted.) As with its statute of frauds claim, defendant focuses primarily on the 2002 letter agreement and argues it did "not *expressly* condition the [re]conveyance on the recording of a final map." But as discussed, the trial court found plaintiff's reconveyance agreement with the Shenandoah entities consisted of several documents. The evidence supports its conclusion and, on appeal, we are bound by its finding.

The cases on which defendant relies, *Black Hills Investments, Inc. v. Albertson's, Inc., supra,* 146 Cal.App.4th 883 and *Sixells, LLC v. Cannery Business Park* (2008) 170 Cal.App.4th 648, are distinguishable. Each found a contract for the sale of unsubdivided properties void because it gave a party the option of waiving compliance with the SMA.

Defendant also argues "[n]either the 2002 Letter Agreement nor the 2005 escrow amendment provide for a remedy if the final tract map is never obtained." First, as just mentioned, the latter document expressly conditioned the Shenandoah entities' reconveyance obligation on the recordation of the final maps. Second, defendant cites no authority for the proposition the exception created by Government Code section 66499.30, subdivision (e) requires an agreement to provide an alternative remedy.

In its reply brief, defendant attempts to rely on the recent decision in *Corrie v. Soloway* (2013) 216 Cal.App.4th 436. That case actually supports a conclusion the reconveyance agreement at issue here is valid. In *Corrie*, the parties entered into an option agreement giving the plaintiff an option to purchase a portion of a parcel that had not been subdivided. The parties renewed the option twice with additional terms. Both

12

the original option and the first renewal failed to comply with the SMA. But the second renewal provided that it was conditioned on compliance with the Act. The Court of Appeal held the second renewal option constituted an enforceable agreement, noting in part: "Section 66499.30(e) does not specify a particular form of words required to expressly condition a sale of real property on compliance with the SMA. We decline to construe it as a trap for the unwary. The parties in this case used language obviously designed to track and comply with section 66499.30(e), not to evade it. 'A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.' (Civ. Code, § 1643.) We therefore find that the option agreement created by Amendment No. 2 satisfied the [SMA's] requirements." (*Corrie v. Soloway, supra,* 216 Cal.App.4th at p. 452.)

  The same is true here. We conclude the trial court properly held the reconveyance agreement complied with the SMA.

*3. Parol Evidence*

  Defendant's final argument is that the trial court committed prejudicial error by allowing plaintiff to present "parol evidence . . . to prove that the actual agreements between the Shenandoah entities and 1st Centennial in 2004 and 2006 were different from the terms and conditions of the written agreements," while "limit[ing its] efforts to introduce the written terms of 1st Centennial's agreements with SSDC, and to inquire [about] . . . Safren's understanding of the written representations he made to 1st Centennial in those documents." Plaintiff responds that he "did not offer . . . evidence to alter the terms of any contracts between the Shenandoah entities and 1st Centennial Bank," and thus defendant "has confused the issue of which agreement was actually at

13

issue during trial." We agree defendant's argument misconstrues the issues at trial and the court's rulings on the admission of evidence.

The trial did not concern the terms of the 2004 and 2006 loan agreements. Rather, it focused on whether plaintiff held an enforceable interest in the portion of tract map 29151 designated as commercial property and whether 1st Centennial Bank, defendant's predecessor in interest, had notice of or reason to inquire about plaintiff's interest in the property before encumbering it. Defendant's statute of frauds and the SMA claims addressed the first issue, while its parol evidence argument concerned the second question.

As previously discussed plaintiff carried his burden of proof on the first issue. The evidence also supports the trial court finding 1st Centennial knew of plaintiff's interest in the commercial parcels or had been placed on inquiry notice as to his interest. "The determination whether a party is a good faith purchaser or encumbrancer for value ordinarily is a question of fact; on appeal, that determination will not be reversed unless it is unsupported by substantial evidence." (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 536.) "On appeal, we presume the judgment is correct and indulge all intendments and presumptions in favor of its correctness." (*Chin v. Namvar* (2008) 166 Cal.App.4th 994, 1009.) Defendant's effort to rely on the testimony of Schoonover and Parmer and to attack the credibility of plaintiff's witnesses lacks merit. "[N]either conflicts in the evidence nor '"testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."'" (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.)

Contrary to defendant's argument, plaintiff made no attempt to introduce evidence to vary the terms of either the 2004 or the 2006 loans 1st Centennial made to the

14

Shenandoah entities. Rather, plaintiff sought to establish that 1st Centennial's loan officers, Schoonover and Parmer, knew about or had reason to inquire regarding plaintiff's interest before funding the Shenandoah loans and recording the bank's trust deeds securing them. As a result, defendant's claim that the trial court erroneously excluded its parol evidence concerning Safren's *understanding* of the loan documents is simply irrelevant.

Defendant also contends plaintiff was improperly allowed to introduce evidence that 1st Centennial and the Shenandoah entities had a "side deal" to "only rely on the residential lots as collateral despite the loan documents." To the contrary, plaintiff introduced the evidence of the preliminary commitment letters, the appraisal, and oral testimony to corroborate his claim Schoonover and Parmer knew of or should have known of his interest in the commercial property. Defendant's claim that Edwards' March 27, 2006 fax could not "put 1st Centennial on its guard" is contrary to Parmer's testimony. She testified she could not recall seeing the documents attached to the fax, but that if she had seen them, she would have shown them to Schoonover. In turn, Schoonover acknowledged that had he seen the documents "it would have raised a red flag."

Thus, we reject defendant's attempt to rely on the parol evidence rule to overturn the trial court's judgment.

### 4. The Injunctions

Defendant's first appeal (Case No. G049835) challenged the trial court's order denying its motion to dissolve the preliminary injunction. That order was appealable. (Code Civ. Proc., § 904.1, subd. (a)(6) ["An appeal . . . may be taken from" "an order . . . refusing to . . . dissolve an injunction"]; see *San Francisco v. Muller* (1960) 177 Cal.App.2d 600, 602.) But while that appeal was pending, this case proceeded to

15

trial and the court entered a judgment on the first and second phases, which included a permanent injunction affording plaintiff the same relief as the preliminary injunction. Consequently, defendant's appeal from the order denying its request to dissolve the preliminary injunction is now moot. (*Pacific Gas & Electric Co. v. City of Berkeley* (1976) 60 Cal.App.3d 123, 126, fn. 4; *Peoples Ditch Co. v. Foothill Irr. Dist.* (1930) 103 Cal.App. 321, 326 ["'Upon the entry of the final decree th[e] provisional remedy was merged in the perpetual injunction . . . and ceased to have any operative effect'"].) Therefore, we shall dismiss defendant's appeal from the order denying its motion to dissolve the preliminary injunction.

Defendant claims the permanent injunction contained in the judgment is too broad because it "enjoin[s it] from foreclosing against any of the collateral." But at the time the trial court entered its interlocutory judgment, a final map creating legally described lots for the balance of the land covered by tract map 29151 had not yet been recorded. Thus, the court could not simply allow defendant to proceed with a foreclosure on the remaining portion of that land.

Finally, it also argues that enjoining foreclosure was improper because plaintiff could be fully compensated by money damages. Whether a party has an adequate remedy at law presents a factual question and our review is limited to the question "whether there is any substantial evidence to support the finding thereon." (*People v. Monterey Fish Products Co.* (1925) 195 Cal. 548, 564.) Defendant fails to show the trial court's injunction lacks evidentiary support.

DISPOSITION

Respondent's motion to dismiss is granted as to appellant's appeal from the order denying the motion to dissolve the preliminary injunction. The appeal from that

16

order is dismissed on the ground the ruling is moot. In all other respects, respondent's motion is denied. The appeal from the order denying the motion to strike respondent's memorandum of costs is dismissed at appellant's request. The judgment is modified to state that, if it is determined a lawful parcel cannot be timely created on the remaining commercial property, appellant may foreclose on it after compensating respondent for the value of his interest in an amount to be determined by the superior court. As so modified the judgment is affirmed. Respondent shall recover his costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.

17